**26SL-CC04152**

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| BUILD-A-BEAR ENTERTAINMENT, LLC, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| KABU PRODUCTIONS, LLC, | ) ) ) |
| 1724 Whitley Ave.<br>Los Angeles, CA 90028 | ) ) ) |
| and | ) ) |
| PATRICK HUGHES, | ) ) ) |
| 1003 Chestnut Street<br>Burbank, CA 91506 | ) ) ) |
| and | ) ) |
| FOUNDATION MEDIA PARTNERS, LLC, | ) ) ) |
| 1003 Chestnut Street<br>Burbank, CA 91506 | ) ) ) |
| Defendants. | ) ) |

Cause No.

Division No.

**JURY TRIAL DEMANDED**

**PETITION**

COMES NOW Plaintiff Build-A-Bear Entertainment, LLC ("Plaintiff" or "BABE"), and

for its Petition against Defendants Kabu Productions, LLC ("KP"), Patrick Hughes ("Hughes"),

and Foundation Media Partners, LLC ("FMP") (KP, Hughes, and FMP together, "Defendants"),

states:

**PARTIES**

1.      Plaintiff BABE is a Missouri limited liability company with its principal place of

business located in St. Louis, Missouri.

**Exhibit**

**A**

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

2.      Upon information and belief, Defendant KP is a California limited liability company with an address in Los Angeles, California.

3.      Upon information and belief, Defendant Hughes is the sole member and owner of KP and is a California resident with an address in Los Angeles, California.

4.      Upon information and belief, Hughes operates KP without regard to the corporate form, including but not limited to by comingling funds and other assets, treating the assets of the business as his own, failing to keep proper records, disregarding legal formalities, using the corporate entity to procure labor, services, or merchandise for another person or entity, and inadequately capitalizing the business.  Accordingly, KP is not distinct from Hughes in any meaningful way.  Instead, KP is a corporate shell for Hughes' personal affairs.  A unity of interest and ownership exists between KP and Hughes such that separate personalities of KP and Hughes do not exist.  Further, an inequitable result would follow if the acts of KP as treated as those of KP alone.  KP is therefore an alter ego of Hughes, thus rendering Hughes individually responsible for KP's misdeeds.

5.      Upon information and belief, Defendant FMP is a California limited liability company with an address in Los Angeles, California.

6.      Upon information and belief, Hughes operates FMP without regard to the corporate form, including but not limited to by comingling funds and other assets, treating the assets of the business as his own, failing to keep proper records, disregarding legal formalities, using the corporate entity to procure labor, services, or merchandise for another person or entity, and inadequately capitalizing the business.  Accordingly, FMP is not distinct from Hughes in any meaningful way.  Instead, FMP is a corporate shell for Hughes' personal affairs.  A unity of interest and ownership exists between FMP and Hughes such that separate personalities of FMP and

2

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

Hughes do not exist.  Further, an inequitable result would follow if the acts of FMP as treated as those of FMP alone.  FMP is therefore an alter ego of Hughes, thus rendering Hughes individually responsible for FMP's misdeeds.

## VENUE AND JURISDICTION

7.      Venue is proper in this court pursuant to Mo. Rev. Stat. §508.010.2(4) in that all of the defendants are nonresidents of the state and no count herein alleges a tort, such that suit may be brought in any county in this state.

8.      This Court has personal jurisdiction over Defendants in that Defendants have had continuous and systematic contacts within this Circuit and the State of Missouri, specifically including but not limited to, making and performing contracts in Missouri, providing goods and services in Missouri, and transacting business in Missouri.  Defendants are also subject to personal jurisdiction in this Circuit and the State of Missouri because Defendants performed acts in Missouri which gave rise to these causes of action, which constitute sufficient minimum contacts with Missouri to comply with the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and which subject Defendants to Missouri's long-arm statute, MO. REV. STAT. § 506.500.  Among other things, Defendants made and purported to perform contracts in and substantially connected with the State of Missouri, said contracts giving rise to claims set forth herein.  Defendants also transmitted or caused to be transmitted goods to and provided services in Missouri and did business in Missouri with Plaintiff, said transactions giving rise to the claims set forth herein.  Defendants' contacts with Missouri were knowing and purposeful, such that Defendants should reasonably have anticipated being haled into court in Missouri.

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

9.     Venue and jurisdiction are further appropriate in this Court in that Defendants consented to venue and jurisdiction pursuant to the contract at issue herein and in that Hughes is legally indistinguishable from KP and FMP.

## BACKGROUND

10.    BABE is a subsidiary of Build-A-Bear Workshop, Inc. ("Build-A-Bear").

11.    Founded in 1997, Build-A-Bear is a multi-generational global brand focused on its mission to "add a little more heart to life", appealing to a wide array of consumer groups who enjoy the personal expression in making their own "furry friends" to celebrate and commemorate life moments.

12.    From humble beginnings and a single retail store in St. Louis, Missouri, Build-A-Bear has emerged as one of the world's leaders in high-quality plush toys, innovative store experiences, and engaging, family-friendly entertainment.

13.    Among other things, guests at Build-A-Bear can create their own plush toys by participating in the stuffing, dressing, accessorizing, and naming of their own teddy bears and other plush toys based on Build-A-Bear's own intellectual property and in conjunction with a variety of best-in-class licenses.

14.    Build-A-Bear currently has more than 650 interactive company-owned, partner-operated and franchise experience locations across the country and around the world, where a variety of formats provide guests of all ages a hands-on entertaining experience and foster a lasting and emotional brand connection.

15.    The hands-on and interactive nature of Build-A-Bear's locations combined with Build-A-Bear's pop-culture appeal has enabled Build-A-Bear to expand beyond its retail stores to include e-commerce sales on www.buildabear.com and non-plush branded consumer categories

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

via out-bound licensing agreements with leading manufacturers, as well as the creation of engaging content via BABE.

16.    In July 2018, Build-A-Bear launched its "KABU™" brand, which included plush toys inspired by "kawaii"-style art, outfits, accessories, a graphic novel, a mobile gaming application, and clothing for tweens.

17.    Build-A-Bear's "KABU™" brand focused on storylines with furry friends (like Pawlette®, Bearemy®, and Bearnice™) who tackled adventures and challenges together, and helped introduce classic and new Build-A-Bear characters to a new generation of guests.

18.    As part of the continued expansion of the "KABU™" brand, BABE engaged Defendants to produce an animated series based on the "KABU™" brand ("the KABU Series").

19.    Specifically, BABE and Defendants KP and Hughes entered into a Production Agreement, dated June 20, 2023, subsequently amended on October 31, 2024, and April 30, 2025, pursuant to which BABE engaged Defendants KP and Hughes to produce the KABU Series (the "KABU Production Agreement").  A true and accurate copy of the KABU Production Agreement, inclusive of all amendments, is attached hereto as **Exhibit A** and incorporated by reference herein.

20.    Pursuant to the KABU Production Agreement, Defendants KP and Hughes undertook certain obligations, including producing the KABU Series and rendering all production services necessary to deliver the completed KABU Series to BABE and as ordinarily and customarily rendered by first class producers for the production of animated series; supplying, providing, and applying technical knowledge, expertise and judgment with regard to the pre-production, production and post-production of the KABU Series; consulting with and collaborating with BABE and the production services company in order to create and define the look, premise, story line and characters of the KABU Series; participating in the casting process

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

and making recommendations to BABE with respect to the potential cast (either directly or by hiring a casting director); reviewing and commenting on cuts; managing and supervising the production services company in its production of the KABU Series; managing and supervising the entities involved in the postproduction of the KABU Series; becoming guild signatory for any applicable guilds; engaging an animation company to handle animation on the Series; engaging and paying all above the line and below the line personnel; and paying any guild payments as necessary, collectively defined as the "Production Services".

21.     Pursuant to the KABU Production Agreement, Defendants KP and Hughes were required to obtain final prior written approval for all business, creative, and other material decisions in connection with the KABU Series, including all key elements of the KABU Series, the director, the casting director, the individual producer, the principals of the case, any third parties engaged to provide production services, and all customary and material business and budget decisions including the total budget, insurance, the Approved Budget and the Production Schedule (both as defined by the KABU Production Agreement), and any changes thereto.

22.     Pursuant to the KABU Production Agreement, Defendants KP and Hughes were required to produce the KABU Series and complete the required Production Services in accordance with the Approved Budget and the Production Schedule.  The initial Approved Budget and Production Schedule for the KABU Production Agreement required that Defendants KP and Hughes produce ten (10) episodes of the KABU Series, each at a minimum length of eleven (11) minutes, and deliver all of those episodes to BABE no later than April 1, 2024, for a total cash production budget of $2,965,588.73.

23.     Defendants knew that BABE expected to release the KABU Series on or about April 14, 2024.

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

24.     Notwithstanding Defendants' obligations and repeated requests from BABE for compliance, Defendants utterly failed to comply with their obligations, including under the KABU Production Agreement.

25.     For example, Defendants KP and Hughes completely failed to deliver the required number of episodes by April 1, 2024 in accordance with the Approved Budget.

26.     The date for the delivery of the first set of episodes came and went.

27.     BABE repeatedly inquired as to the status of the delivery of the episodes for the KABU Series, to which BABE received no satisfactory responses or explanations.

28.     Instead, Defendants withheld updates on the delivery of the episodes for the KABU Series and used the delays of their own making as a means of trying to extract additional monies from BABE and trying to attach Defendants KP and Hughes as producers to all future seasons of the KABU Series.

29.     Indeed, without BABE's prior and specific written approval, Defendants KP and Hughes had previously executed multiple agreements with an animation company (Laughing Dragon) and a Canadian tax credit entity (Kaibou) for purposes of producing the KABU Series.

30.     BABE repeatedly asked Defendants to provide BABE with copies of the agreements.

31.     In response, Defendants and their lawyer repeatedly and directly: (i) refused to provide BABE with the requested agreements; (ii) falsely asserted that BABE was not entitled to the very agreements governing production of the KABU Series for which BABE had paid millions of dollars; and (iii) incredibly claimed that Defendants did not know why BABE wanted these agreements.

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

32.     BABE made repeated demands for copies of all the agreements for the KABU Series, but Defendants and their lawyer actively refused to produce the agreements and only relented after conditioning delivery of all agreements on BABE agreeing to pay nearly one million dollars to complete production of the KABU Series.

33.     Defendants made additional promises and assurances to BABE, wherein Defendants KP and Hughes committed to produce ten (10) episodes of the KABU Series, each at a minimum length of eleven (11) minutes, and deliver all of those episodes to BABE no later than April 15, 2025, for a total cash production budget of $2,965,588.73; and further to produce an additional three (3) episodes of the KABU Series, each at a minimum length of eleven (11) minutes, and deliver those three additional episodes to BABE no later than May 31, 2025, for a total cash production budget of $950,000.00.  Defendants KP and Hughes further promised to deliver the thirteen (13) episodes of the KABU Series edited into twenty-six (26) episodes, each five and a half (5 ½) minutes in length, for alternative distribution formats, along with additional promotional materials and a trailer.

34.     Once again, Defendants KP and Hughes blew past the delivery deadline without adequate explanation or excuse.  Specifically, Defendants KP and Hughes failed to deliver the required ten episodes by April 15, 2025, or the required additional three episodes or any of the other required materials by May 31, 2025 in accordance with their promises.

35.     Even after these deadlines had past, Defendants KP and Hughes actively refused to make any finished episodes or underlying production contracts and agreements available to BABE for its review, instead holding the episodes and agreements hostage while again demanding more monies from BABE.

8

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

36.    Defendants were exploring, discussing, and negotiating terms with the animation company Laughing Dragon, including providing financial interests in Defendant KP and backend participation in the KABU Series in exchange for Laughing Dragon paying monies directly to Defendants KP and Hughes, when it was not in BABE's interest to do so.

37.    Defendants completely failed to monitor and understand the progress of the KABU Series production and to ensure its successful completion.  Defendants' oversight of the KABU Series production was so deficient that Defendants failed for many months to demand timely completion of the KABU Series episodes and to actively monitor the progress of the production or how the budgeted monies were being spent on the production process.

38.    Because they entirely failed to manage the KABU Series production, Defendants claimed shock and surprise when the animation company (Laughing Dragon) had its bank accounts seized by creditors and had to initiate bankruptcy proceedings.

39.    Recognizing the animation company's bankruptcy would obviously be problematic to BABE, Defendants discussed with Laughing Dragon hiding Laughing Dragon's financial problems and failure to complete the episodes from BABE.

40.    Upon information and belief, Defendants had internal and external discussions regarding how to portray these production problems, failures, and errors in the best possible light to BABE, despite the reality of Defendants' complete and utter mismanagement of the project. This included discussions about what information Defendants should or should not provide to BABE in order to keep the KABU Series project tied to Defendants and Laughing Dragon on a going forward basis.

41.    After failing to deliver any completed episodes for the KABU Series and after hiring an animation company that went bankrupt, Defendants KP and Hughes made another set of

9

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

promises to deliver all thirteen (13) episodes, as well as all executed agreements for these episodes and all other additional deliverables, no later than August 31, 2025, with BABE reserving all rights as to Defendants' prior failures to perform and prior breaches of the KABU Production Agreement.

42.    Pursuant to the KABU Production Agreement and as part of the nature of their relationship with BABE, Defendants were required to make the Production Services Defendants' first priority, with no other such engagement to interfere with Defendants' ability, availability and capacity to fulfill the obligations and to carry out the Production Services.

43.    Pursuant to the KABU Production Agreement and as part of the nature of their relationship with BABE, Defendants were prohibited from engaging in activities or rendering outside services that would or might interfere with their respective services under the agreement.

44.    Pursuant to the KABU Production Agreement and as part of the nature of their relationship with BABE, Defendants were required to provide the Production Services in full communication and collaboration with BABE and its designees and to the full extent of Defendants' skill and ability.

45.    Pursuant to the KABU Production Agreement, Defendants KP and Hughes were prohibited from entering into any written agreement for persons having backend participation unless the terms of such agreements were approved in advance and in writing by BABE.

46.    Pursuant to the KABU Production Agreement and otherwise, Defendants were required to acquire all rights necessary for the production and was further required, at BABE's request, to deliver to BABE copies of all such documents as evidence of Defendants' acquisition of such rights, including all copyrights, licenses, and other appropriate licenses of all elements of the KABU Series created under the KABU Production Agreement.

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

47.     Pursuant to the KABU Production Agreement, Defendants KP and Hughes were required to secure and maintain customary insurance coverages from a reputable company reasonably acceptable to BABE during the term of the agreement, containing specific coverage and limits as reasonable requested by BABE and to include all errors and omissions and general liability insurance policies for the KABU Series.

48.     Pursuant to the KABU Production Agreement and upon its expiration or earlier termination (wherein the term expired no later than upon completion and delivery of the KABU Series) and as part of the nature of their relationship with BABE, Defendants were required to immediately deliver to BABE all materials and documentation created by Defendants under the KABU Production Agreement, including, without limitation, all contracts related to the Series and any work in progress in its form at the time of termination.

49.     Notably, BABE specifically and repeatedly requested that Defendants provide copies of all executed contracts, under which BABE was required to pay millions of dollars to produce the KABU Series.

50.     Defendants did not timely provide these contracts to BABE.

51.     Defendants did not obtain prior written approval from BABE for these contracts.

52.     Defendants refused to provide contracts requiring payment of millions of BABE's dollars.

53.     In fact, to this date, Defendants still have not provided all such contracts to BABE.

54.     Incredibly, Defendants retained counsel, flatly refused to provide certain of these contracts, and then demanded additional monies as a condition of moving forward with the project.

55.     As compensation for arranging the Production Services and producing the KABU Series in accordance with the terms of the KABU Production Agreement, BABE agreed to directly

11

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

pay Defendants KP and Hughes a total of $200,000.00, in addition to the millions of dollars to produce the KABU Series. Further, in addition to this direct producing fee and subject to Defendants KP and Hughes fully and satisfactorily performing their material obligations under the KABU Production Agreement, Defendants KP and Hughes were to receive five percent (5%) of one hundred percent (100%) of BABE's Adjusted Gross Profit (as defined by the KABU Production Agreement) earned from distribution of the KABU Series during the term of the KABU Production Agreement and for ten years thereafter.

**COUNT I**
**(Breach of Contract Against Defendants KP and Hughes)**

56.     BABE restates and incorporates by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     The KABU Production Agreement is a valid and enforceable contract.

58.     BABE duly performed or satisfied its obligations, conditions, covenants, and promises required by it under the KABU Production Agreement, including paying Defendants KP and Hughes millions of dollars for the Production Services, including a $200,000 producer fee, and all conditions required by Defendants KP and Hughes' performance occurred.

59.     Defendants KP and Hughes failed to perform and breached their contractual duties under the KABU Production Agreement in numerous ways, including, but not limited to, by:

> a.  failing to deliver to BABE the first ten episodes of the KABU Series on time and within budget by April 1, 2024, as originally scheduled;
>
> b.  failing to deliver to BABE the first ten episodes of the KABU Series on time and within budget by April 15, 2025, as subsequently scheduled;
>
> c.  failing to deliver to BABE the additional three episodes of the KABU Series on time and within budget by May 31, 2025, as scheduled;

12

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

d. failing to deliver to BABE the additional specified deliverables on time by May 31, 2025, as scheduled;

e. failing to deliver to BABE all agreements of voice actors by August 31, 2025, as scheduled;

f. refusing to deliver to BABE all agreements relating to the Production Services, including Defendants KP and Hughes' side agreements and letters of intent with Laughing Dragon to invest $1 million for a 15% stake in KP and its backend participation in the KABU Series;

g. refusing to deliver all episodes of the KABU Series on time and demanding additional payments for release of the episodes, despite Defendants KP and Hughes' existing contractual obligations;

h. repeatedly withholding information from BABE and misrepresenting the status of the KABU Series' budget, schedule, and Production Services;

i. delivering episodes of the KABU Series that were substandard and had compromised production value; and

j. failing to manage the underlying animation and production services by Laughing Dragon, yielding production delays, animation problems, and other production problems; and

k. failing to adequately account for all monies paid by BABE for the production.

60. As a direct and proximate cause of Defendants KP and Hughes' breaches of the KABU Production Agreement, BABE has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff BABE prays for judgment to be entered in its favor and against Defendants KP and Hughes for actual damages which exceed $25,000.00, prejudgment interest,

13

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

costs and attorneys' fees incurred herein, and for such other and further relief which the Court deems just and proper under the circumstances.

## COUNT II
### (Breach of Fiduciary Duty Against Defendants KP and Hughes)

61.     BABE restates and incorporates by reference the allegations in paragraphs 1 through 60 as if fully set forth herein.

62.     Pursuant to the KABU Production Agreement, Defendants undertook fiduciary obligations in favor of BABE.  Indeed, Defendants expressly agreed to make the Production Services their first priority, with no other such engagement to interfere with their ability, availability and capacity to fulfill the obligations and to carry out the Production Services. Therefore, BABE placed its trust in Defendants to act solely in BABE's best interests, including by sharing sensitive, confidential information with Defendants.

63.     Defendants breached their fiduciary obligations by not putting BABE's interests above their own.  For instance, Defendants acted in their own self-interest, irrespective of and in fact at times to the detriment of BABE.

64.     Defendants' breaches were knowing, willful, intentional, and in wanton disregard of its duties and obligations to BABE, such that punitive damages are warranted.

65.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, BABE has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff BABE prays for judgment to be entered in its favor and against Defendants KP and Hughes for actual damages which exceed $25,000.00, prejudgment interest, punitive damages, costs and attorneys' fees incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

14

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

## COUNT III
### (Breach of Fiduciary Duty Against Defendants FMP and Hughes)

66. BABE restates and incorporates by reference the allegations in paragraphs 1 through 65 as if fully set forth herein.

67. Defendants FMP, and thus also Defendant Hughes, undertook fiduciary obligations under Missouri law in favor of BABE as a subsidiary of Build-A-Bear Workshop. Defendants FMP and Hughes agreed and promised to always put the needs of BABE over its own. BABE placed its trust in Defendants FMP and Hughes to act solely in BABE's best interests and put BABE's needs over Defendants FMP's and Hughes' needs, including by sharing sensitive, confidential information with Defendants FMP and Hughes. The nature of the relationship between BABE and Defendants FMP and Hughes was such that it imposed fiduciary duty obligations upon Defendants FMP and Hughes in favor of BABE.

68. Defendants FMP and Hughes breached their fiduciary obligations by not putting BABE's interests above their own. For instance, Defendants FMP and Hughes acted in their own self-interest, irrespective of and in fact at times to the detriment of BABE.

69. Defendants FMP's and Hughes' breaches were knowing, willful, intentional, and in wanton disregard of their duties and obligations to BABE, such that punitive damages are warranted.

70. As a direct and proximate result of Defendants FMP's and Hughes' breaches of their fiduciary duties, BABE has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff BABE prays for judgment to be entered in its favor and against Defendants FMP and Hughes for actual damages which exceed $25,000.00, prejudgment interest, punitive damages, costs and attorneys' fees incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

## COUNT IV
### (Declaratory Judgment Against Defendants KP, Hughes, and FMP)

71.     BABE restates and incorporates by reference the allegations in paragraphs 1 through 70 as if fully set forth herein.

72.     Defendants KP and Hughes did not fully and faithfully render the services required under the KABU Production Agreement, did not fully and satisfactorily perform their material obligations thereunder, and are in uncured material breach of material terms thereof.

73.     BABE therefore is no longer required under the KABU Production Agreement to pay Defendants KP and Hughes five percent (5%) of one hundred percent (100%) of BABE's Adjusted Gross Profit (as defined by the KABU Production Agreement) earned from distribution of the KABU Series during the term of the KABU Production Agreement and for ten years thereafter.

74.     BABE therefore is also no longer required under the KABU Production Agreement to include an "Executive Producer" credit in the KABU Series for Defendant Hughes, a moving logo credit for Defendant FMP, or "Producer" credits for FMP employees Harvey Russell and Jason Weiss.

75.     BABE seeks specific relief through a decree of conclusive character so that there is no further dispute between the parties as to any further obligations of BABE with respect to Defendants arising under or relating to the KABU Production Agreement.

76.     An actual and justiciable controversy has arisen between BABE and Defendants in this regard.

77.     Pursuant to Mo. Rev. Stat. § 527.010 and applicable law, BABE is entitled to a declaratory judgment that BABE is not required to pay Defendants KP and Hughes five percent (5%) of one hundred percent (100%) of BABE's Adjusted Gross Profit (as defined by the KABU

16

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

Production Agreement) earned from distribution of the KABU Series during the term of the KABU Production Agreement and for ten years thereafter; that BABE is not required to include an "Executive Producer" credit in the KABU Series for Defendant Hughes, a moving logo credit for Defendant FMP, or "Producer" credits for FMP employees Harvey Russell and Jason Weiss; and that BABE is not required to fulfill any further obligations to Defendants under the KABU Production Agreement.

WHEREFORE, Plaintiff BABE prays for declaratory judgment to be entered in favor of BABE and against Defendants in accordance with the above, for recovery of its attorneys' fees and costs, and for such other and further relief as the Court deems just and proper under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Build-A-Bear Entertainment, LLC, respectfully requests judgment in its favor and against Defendants Kabu Productions, LLC, Patrick Hughes, and Foundation Media Partners, LLC and prays for:

a. Such damages as Plaintiff has sustained as a result of:

   1. Defendants KP's and Hughes' breach of contract; and

   2. Defendants KP's, FMP's, and Hughes' breaches of their fiduciary obligations to Plaintiff;

b. Prejudgment and post-judgment interest;

c. An assessment of costs against Defendants;

d. An award of attorneys' fees against Defendants and for Plaintiff;

e. A declaratory judgment finding that Plaintiff is longer required under the KABU Production Agreement to pay Defendants KP and Hughes five percent (5%) of one

17

Electronically Filed - St Louis County - June 03, 2026 - 05:06 PM

hundred percent (100%) of BABE's Adjusted Gross Profit (as defined by the KABU Production Agreement) earned from distribution of the KABU Series during the term of the KABU Production Agreement and for ten years thereafter, to include an "Executive Producer" credit in the KABU Series for Defendant Hughes, a moving logo credit for Defendant FMP, or "Producer" credits for FMP employees Harvey Russell and Jason Weiss, or to fulfill any further obligations to Defendants KP and Hughes under the KABU Production Agreement; and

f.      Such additional and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR A JURY TRIAL

Plaintiff BABE hereby demands trial by jury of all issues so triable in this action.

Dated:  June 3, 2026                    Respectfully submitted,

                                        **LEWIS RICE LLC**

                                        By:  _____
                                            Philip J. Mackey, #48630
                                            Michael J. Hickey, #47136
                                            Michael L. Jente, #62980

                                        600 Washington Avenue, Suite 2500
                                        St. Louis, Missouri  63101
                                        Telephone:  (314) 444-7600
                                        Facsimile:  (314) 241-6056
                                        pmackey@lewisrice.com
                                        mhickey@lewisrice.com
                                        mjente@lewisrice.com

                                        Attorneys for Plaintiff Build-A-Bear Entertainment, LLC

18